# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION- COLUMBUS

| | |
|---|---|
| SIDNEY HAMILTON, | |
| Plaintiff, | CIVIL COMPLAINT |
| v. | |
| HENRY LEGAL GROUP, PLLC d/b/a HEARTLAND LEGAL GROUP, LLC, | CASE NO. 2:22-cv-01945 |
| Defendant. | DEMAND FOR JURY TRIAL |

## DEMAND FOR ARBITRATION

Now comes SIDNEY HAMILTON ("Plaintiff"), by and through the undersigned, complaining as to the conduct of HENRY LEGAL GROUP, PLLC d/b/a HEARTLAND LEGAL GROUP, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, and the Ohio Credit Services Organizations Act ("OCSOA") under O.R.C. § 4712.01 *et seq.* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Southern District of Ohio and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Southern District of Ohio

**PARTIES**

4. Plaintiff is a consumer over 18 years of age residing in Columbus, Ohio, which lies within the Southern District of Ohio.

5. Defendant is a credit repair organization that offers its clients both legal and non-legal services designed to resolve their debt issues and improve their credit history. Defendant is a professional limited liability company organized under the laws of the state of Michigan with its principal place of business located at 41000 Woodward Avenue, Suite 350, Bloomfield Hills, Michigan 48304.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

7. In approximately 2019, Plaintiff was wanting to address various debts that he had accumulated, and so began searching for credit repair and debt consolidation programs to assist in his efforts.

8. Plaintiff subsequently came upon Defendant.

9. Plaintiff spoke with Defendant, and Defendant explained the nature of its services and how Plaintiff would enroll a number of debts in Defendant's program, make monthly payments to Defendant, at which point Defendant would begin working on resolving Plaintiff's debts with the

creditors or those seeking collection of the enrolled debts, and would similarly defend Plaintiff in the event of any sort of litigation.

10. Clamant clarified that he wanted the debts resolved so as to improve his credit history and rating, which Defendant advised its services would accomplish.

11. Plaintiff subsequently entered into a contract with Defendant for the provision of credit repair services and enrolled a number of debts, including a Discover Bank debt.

12. In order to receive Defendant's services, Plaintiff had to make upfront payment in the form of a "retainer" – which were fees charged and recouped by Defendant prior to Defendant fully performing the services justifying the retention of such fees.

13. While Defendant was able to resolve most of Plaintiff's obligations, problems arose in connection with the enrolled Discover account.

14. Plaintiff had made sufficient monthly payments for Defendant to go about resolving such obligation, yet Defendant failed to do so.

15. Instead, Defendant allowed Plaintiff to be sued in connection with the Discover debt.

16. After he was sued, Plaintiff was working with Defendant to try and resolve the issue.

17. Plaintiff had sufficient funds in his account for Defendant to settle the debt, although there seemed to be an internal miscommunication with Defendant that resulted in Defendant failing to resolve the account despite Plaintiff making all necessary payments.

18. Because Defendant's internal communication resulted in no funds being available – despite such funds being available and Plaintiff informing Defendant as such – Defendant failed to provide the negotiated settlement it represented it would, resulting in the Discover debt being reduced to judgment.

19. Plaintiff is now being garnished in connection with the Discover debt Defendant advised it would be able to resolve.

20. But-for Defendant's deceptive and misleading representations as to the nature of the services it was providing, Plaintiff would not have been garnished in connection with the Discover debt. The funds Plaintiff diverted to Defendant could have been used himself to address the Discover obligation.

21. Frustrated, Plaintiff complained to Defendant.

22. Defendant offered Plaintiff a refund of $3,800 of his payments made (payments which should be refunded as a matter of course under the CROA given Defendant's failure to fully perform the represented services), but only if Plaintiff signed a release.

23. This release sought to absolve Defendant for its conduct under the guise of being necessary to receive his refund.

24. Plaintiff refused to sign the release, and explored his legal options.

25. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

26. In an effort to exercise his rights, Plaintiff attempted to initiate an arbitration proceeding against Defendant with the American Arbitration Association ("AAA"), given the existence of an arbitration clause in the contract between the parties.

27. However, Defendant failed to respond to that arbitration demand despite its contractual assent to submit disputes to binding arbitration.

28. As a result of Defendant's failure to participate, the AAA declined administration of Plaintiff's demand.

29. Plaintiff and her counsel incurred time and expenses

30. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, being subjected to wage garnishment, denial of the benefit of his bargain with Defendant, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

31. Plaintiff repeats and realleges paragraphs 1 through 30 as though fully set forth herein.

32. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

33. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

    a. **Violations of CROA § 1679b(a)**

34. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

35. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant advised that it would actively reach a negotiated settlement if Plaintiff had sufficient funds. Plaintiff had such sufficient funds, yet Defendant failed to achieve the negotiated settlement on the Discover account, underscoring the deceptive and misleading nature of Defendant's conduct.

36. Defendant further acted deceptively when it suggested to Plaintiff that there were no funds in his account from which a negotiated settlement could be reached. Such funds were clearly available, yet Defendant simply failed to do its job.

37. Additionally, Defendant acted deceptively when it attempted to convince Plaintiff to waive his rights in return for a refund, when such refund was contractually and statutorily required to be provided due to Defendant's failure to perform the services justifying the retention of Plaintiff's payments.

    b.  **Violations of CROA § 1679b(b)**

38. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

39. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a retainer for services upfront, before such services is performed, is inherently in violation of the CROA. Defendant similarly withheld sums for credit repair services it never actually performed, and refused to refund such payments unless Plaintiff agreed to waive his rights.

    c. **Violation of CROA § 1679c**

40. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

41. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

    d. **Violation of CROA §§ 1679d(4)**

42. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'"

43. Defendant violated 15 U.S.C. §§ 1679d(4) through its failure to provide the precise disclosure required by the CROA in the manner required thereby.

    e. **Violation of CROA § 1679f(b)**

44. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

45. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded him under the CROA. In the contract between the parties, Defendant attempts to get Plaintiff to waive a number of rights and protections afforded him. For example, Defendant's contract attempts to preclude Plaintiff from recovering his attorneys' fees if he ultimately prevails on a claim against Defendant.

46. Defendant further violated § 1679f(b) when it attempted to get Plaintiff to waive his protections under the CROA through signing a release in exchange for a refund he was already entitled to.

47. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, SIDNEY HAMILTON, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;
b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);
c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);
d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and
e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE OHIO CREDIT SERVICES ORGANIZATION ACT

48. Plaintiff restates and realleges paragraphs 1 through 47 as though fully set forth herein.

49. Plaintiff is a "buyer" as defined by O.R.C. § 4712.01(A).

50. Defendant is a "credit services organization" as defined by O.R.C. § 4712.01(C)(1).

    a. **Violations of O.R.C. § 4712.04**

51. The OCSOA, pursuant to O.R.C. § 4712.04(A), provides that "[b]efore executing a contract or agreement with a buyer or receiving money or other valuable consideration, a credit services organization shall provide the buyer with a written statement containing" certain information.

52. Defendant violated § 4712.04(A) by failing to provide the statement of rights required to be provided.

    b. **Violations of O.R.C. § 4712.05**

53. The OCSOA, pursuant to O.R.C. § 4712.05, outlines the requirements for credit service organization contracts.

54. Defendant violated this provision due to its contract's noncompliant nature. Defendant's contract contains but a fraction of the information and disclosures required by the OCSOA.

    c. **Violations of O.R.C. § 4712.07**

55. The OCSOA, pursuant to O.R.C. § 4712.07, outlines a number of prohibited practices for credit service organizations.

56. § 4712.07(A) provides that a CSO cannot "[c]harge or receive directly or indirectly from a buyer money or other consideration readily convertible into money until all services the organization has agreed to perform for the buyer are completed . . . ."

57. Defendant violated the above in much the same way it violated 15 U.S.C. § 1679b(b).

58. The OCSOA, pursuant to O.R.C. § 4712.07(C), provides that a CSO cannot "[m]ake or use a false or misleading representation in the offer or sale of the services of the organization." Pursuant to O.R.C. § 4712.07(D), a CSO cannot "[e]ngage, directly or indirectly in an

9

unconscionable, unfair, or deceptive act or practice . . . in connection with the offer or sale of the services of a credit services organization." Similarly, pursuant to O.R.C. § 4712.07(L), a CSO cannot "[e]ngage, directly or indirectly, in any fraudulent or deceptive act, practice, or course of business in connection with the offer or sale of the services of a credit services organization.

59. Defendant violated the above portions of the OCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### d. Violations of O.R.C. § 4712.08

60. The OCSOA, pursuant to O.R.C. § 4712.08, lists a number of further conduct which is prohibited, including making "false promises through advertising or other means in the conduct of its business or engage in a continued course of misrepresentations in the conduct of its business" and engaging "in conduct that constitutes improper, fraudulent, or dishonest dealings in the conduct of its business." O.R.C. §§ 4712.08(B) & (C).

61. Defendant violated the above portions of the OCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### e. Violations of O.R.C. § 4712.09

62. The OCSOA, pursuant to O.R.C. § 4712.09, provides that "No credit services organization shall cause or attempt to cause a buyer to waive a right under [the OCSOA]."

63. Defendant violated this provision through its blatant attempts to cause Plaintiff to waive rights and protections afforded him, as discussed above.

WHEREFORE, Plaintiff, SIDNEY HAMILTON, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to O.R.C. § 4712.10(A);

10

    c.  Awarding Plaintiff punitive damages pursuant to O.R.C. § 4712.10(A);

    d.  Enjoin Defendant from further violations of law pursuant to O.R.C. § 4712.10(B),

    e.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

    f.  Awarding any other relief the Honorable Court deems just and appropriate.

Dated: April 12, 2022                                              Respectfully submitted,

s/ Chad W. Eisenback
Chad W. Eisenback
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Phone: (312) 313-1613
Facsimile: (630) 575-8188
ceisenback@sulaimanlaw.com